**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | **Criminal Action No.** |
| | ) | **5:22-cr-00057-DCR-MAS** |
| **v.** | ) | **and** |
| | ) | **Civil Action No.** |
| **LAMONTE H. BROWN,** | ) | **5:24-cv-00147-DCR-MAS** |
| | ) | |
| **Defendant/Movant.** | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter is before the undersigned on Petitioner Lamonte H. Brown's ("Brown") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Brown asserts nine grounds for relief, including several claims for ineffective assistance of counsel as well as challenging the constitutionality of the statute for which he was convicted. [DE 53]. The United States responded contesting each of these nine grounds. [DE 65]. Following an evidentiary hearing to address one of the nine grounds, the Court recommends Brown's motion be denied for the reasons stated below.

## I.   RELEVANT FACTUAL BACKGROUND

On May 19, 2022, Brown was indicated by the grand jury on a single count charging him with possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1) ("Firearms Case"). [DE 1].

1

The circumstances surrounding the charges are set forth in the plea agreement.

> On June 28, 2021, Lexington Police Department (LPD) officers went to execute arrest warrants on [Brown] at the state Probation Office where [Brown] was scheduled to meet with his supervising officer. LPD units were stationed outside of his residence on Helmsdale Place in Lexington, Fayette County, Kentucky in the Eastern District of Kentucky. While surveillance officers were in place, they observed a female exit the residence she shared with [Brown] with a bag. Moments later she reentered the residence without the bag. After [Brown] was placed under arrest at the Probation Office he was transported back to the Helmsdale residence.
>
> The vehicle in which the female had placed the bag was subsequently searched. The female advised that she placed a bag of marijuana in the trunk of the vehicle after she learned that [Brown] was arrested. As she opened the trunk, officers observed the barrel of a gun. A complete search of the vehicle revealed [several firearms and ammunition].

[DE 20, Page ID# 44 (Plea Agreement)]. Considering Brown's prior felony conviction for trafficking in Scott County in 2019, Brown was indicted on the firearms charge in this case.

Nearly two months after the grand jury issued its indictment, Brown pleaded guilty to the charges per the plea agreement. [DE 19].

While this case was pending, Brown faced a different and separate indictment in *United States v. Brown, et al*, Case No. 5:22-cr-57 (E.D. Ky.) ("Drug Trafficking Case"). There, Brown was charged and convicted of conspiracy to distribute fifty grams or more of actual methamphetamine in violation of 21 U.S.C. § 846. [DE 21 (Superseding Indictment), Drug Trafficking Case]. These charges surround conduct taking place in or around May 2021. [DE 104 (Plea Agreement), Drug Trafficking

Case].  Like in the current case, Brown entered into a plea agreement with the United States.

Both the Firearms Case and the Drug Trafficking Case were scheduled for a joint sentencing hearing on June 16, 2023.  For the Firearms Case, Brown was sentenced to 48 months imprisonment to run consecutively to the sentence in his 2022 case.  [DE 42 (Judgment)].  For the Drug Trafficking Case, Brown was sentenced to 262 months imprisonment.  [DE 203 (Judgment), Drug Trafficking Case].

Brown did not appeal the Firearms Case and timely filed the current habeas petition on June 5, 2024.  [DE 53].  Brown did, however, timely appeal the Drug Trafficking Case.  The Sixth Circuit recently affirmed the District Court's decision in *United States v. Brown*, --- F.4th ---, 2025 WL 716082 (6th Cir. March 6, 2025).

## II.    ANALYSIS

Brown has asserted nine separate grounds for habeas relief.  Most of these grounds are claims that his trial counsel, Noel Caldwell, was ineffective for some specific reason.  The Court will address the claims of ineffective assistance of counsel before addressing the remaining grounds.

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

#### 1.    Legal Standard

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error

of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

One class of alleged constitutional error is ineffective assistance of counsel in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id.* at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential", and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A prejudice showing requires a "reasonable

probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id*. at 695. To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id*. at 730; *Strickland*, 466 U.S. at 697.

### 2.   Ground 1: Coerced Confession

Soon after Brown's arrest in this matter, he confessed to law enforcement that he owned the firearms in question. [DE 53, Page ID# 148-51]. Per Brown, the confession was only obtained through law enforcement coercion. [*Id*.]. Brown argues his counsel, Noel Caldwell, should have sought to suppress the confession. [*Id*.].

"Failing to file a motion to suppress may constitute deficient performance in limited circumstances. Counsel's decision to not file a motion to suppress, however, does not always run afoul of the Sixth Amendment." *Doss v. United States*, No. 1:19-cv-1397, 2019 WL 4055381, at * (N.D. Ohio Aug. 28, 2019) (internal citations omitted; citing several cases in support). "Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . . [S]trategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (internal citations and quotation marks omitted; alteration in original). "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)).

The facts surrounding Brown's arrest are detailed in his plea agreement and quoted above. [DE 20, Page ID# 43-44]. Law enforcement searched the vehicle, finding firearms in the trunk. According to Brown's telling of events, "Mr. Brown was detained at the probation office, put into handcuffs, detained, and taken to his apartment, was *Mirandized*, and law enforcement searched his apartment." [DE 53, Page ID# 148]. When the firearms were discovered, Brown was interrogated. [DE 53, Page ID# 148]. After initially denying ownership of the firearms, the detective told Brown that if the firearms were not his, it must belong to the female meaning she should go to prison. [DE 53, Page ID# 148]. Brown then confessed. [DE 53, Page ID# 148].[1]

Brown argues that such coercion is impermissible and something Caldwell should have challenged. However, even if Brown had filed a motion to suppress, the Court would have rejected the argument. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and

---

[1] The United States highly contests this retelling of the facts, citing body worn camera footage. [DE 65, Page ID# 327-29]. The Court need not consider these disputed facts as it can resolve Brown's claims assuming all facts as he has alleged.

that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Ray v. United States*, 721 F.3d 758, 762 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

"An admission is deemed to be coerced when the conduct of the law enforcement officials is such as to overbear the accused's will to resist." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994). There are three requirements "for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police conduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d. 416, 422 (6th Cir. 1999). "[T]hreats to arrest members of a suspect's family may cause a confession to be involuntary." *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993). Whether a threat to prosecute a third party is coercive "turns on whether the threat could have been lawfully executed." *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003). If the threat can be lawfully executed—where, for example, officers have probable cause to arrest the defendant's family member—there is no coercion and any statements made by that defendant pursuant to that threat are admissible. *See Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001).

Here, law enforcement found firearms in the trunk of a vehicle on Brown's property after observing a female place a bag in that same trunk. Based on those facts, including the female's access to the vehicle and placement of a bag in the trunk

of that vehicle where the firearms and controlled substances were found, law enforcement had probable cause to believe the firearms were possessed by either Brown or the female. And whoever had possession could face criminal charges, such as possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c), or for the drug possession. In other words, the threat was not objectively coercive. And this single question, after Brown had just denied ownership, was not enough to "overbear his will" nor does Brown ever allege that this statement was the crucial motivating factor in his confession.

In summary, Brown had no chance of success if he filed the motion to suppress. Nor did Caldwell have any obligation to file a motion for which he would lose on behalf of his client. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different).

### 3. **Grounds 2 & 3: Insufficient Probable Cause to Search the Vehicle**

In his second ground, Brown complains Caldwell was ineffective for filing a motion to suppress law enforcement's search of the vehicle. [DE 53, Page ID# 152-56]. Similarly, in his third ground, Brown argues that the search of the vehicle was illegal. Again, as with Brown's first ground, Brown must prove his Fourth Amendment claim has merit to establish his claim for ineffective assistance of counsel. *Ray*, 721 F.3d at 762. And again, Brown cannot meet that burden.

8

A defendant can only challenge the admissibility of evidence if his own constitutional rights have been violated. *United States v. Salvucci*, 448 U.S. 83, 86 (1980). In cases involving Fourth Amendment violations, standing is determined "by deciding whether a defendant can establish 'a legitimate expectation' of privacy in the area searched or the item seized." *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005) (citing *Minnesota v. Carter*, 525 U.S. 83, 91 (1998)). In *Davis*, Keith Presley sought to suppress evidence found during a search of Kevin Davis's vehicle. The Sixth Circuit rejected the argument concluding that "Presley has no reasonable expectation of privacy either in Davis's vehicle or in the items seized from Davis's vehicle, because he 'had neither a property nor possessory interest' in them." *Id*. at 360 (citing *United States v. Pino*, 855 F.2d 357, 360 (6th Cir.1988), cert. denied, 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990)).

In this case, Brown denied owning the car in question, arguing it belonged to the female's sister. [DE 65, Page ID# 332 (citing the body worn camera footage)]. Accordingly, Brown has no right to claim any Fourth Amendment violation based upon the search of the vehicle. And because Brown's suppression arguments are without merit, so are his claims of ineffective assistance of counsel. The Court should deny Brown's second and third grounds.

### 4.    <u>Ground 4: Criminal History Points</u>

For his fourth ground, Brown contends that Caldwell should have objected at sentencing to the Court's calculation of his criminal history points under the United

States Sentencing Guidelines ("USSG").[2]  [DE 53, Page ID# 160-64].  The context of Brown's argument stems from the joint sentencing in the Firearms Case and the Drug Trafficking Case.  [DE 53, Page ID# 160].  Per Brown, because his sentencing was on the same day, he could not have a criminal point for the conviction in Drug Trafficking Case when he was sentenced in the Firearms Case.  [DE 53, Page ID# 160].  Brown misapplies the law.

Brown is correct that the Court sentenced him in both cases on the same day. In calculating his criminal history, Brown was awarded a single point in the Firearms Case for his conviction in the Drug Trafficking Case under USSG § 4A1.1(c).  That provision in part (a) assigns three points for each prior sentence exceeding one year and one month, part (b) assigns two points for each prior sentence of at least sixty days, and part (c) assigns one point to each sentence not counted in (a) or (b) up to a maximum of four points.  Because the sentence in the Drug Trafficking Case was then unknown, it was awarded a single point.  And while Brown had yet to be sentenced in the Drug Trafficking Case, the guidelines include such a situation in USSG § 4A1.2(a)(4).  There, "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c)."  The Court clearly and correctly applied the USSG to Brown and his prior conviction pending sentence.  The Sixth Circuit recently affirmed as much in the Drug Trafficking Case for Brown.  *United States v. Brown*, --- F.4th ---, 2025 WL 716082

---

[2] The Court, at sentencing, applied the USSG as issued in 2021.  The Court, in addressing Brown's habeas argument, has utilized the same edition of the USSG.

(6th Cir. March 6, 2025). The fact that the Court sentenced Brown in both cases on the same day in no way alters this conclusion.

Caldwell could not be faulted for raising an objection on behalf of Brown that lacked any support in the USSG. *United States v. Martin*, 45 Fed. App'x. 378, 381 (6th Cir. 2002) (discussing that one's counsel cannot provide deficient performance by failing to raise wholly meritless claims) (citing *Strickland v. Washington*, *supra* at 688).

## 5. __Ground 6: Voluntary Plea__[3]

Brown's sixth ground contends that Caldwell was ineffective because he coerced Brown to plead guilty. Brown points to a few facts for which he felt he was misled.

- Brown was unaware that his sentence in this case could run consecutive to the Drug Trafficking Case [DE 53, Page ID# 168];

- Brown was unaware of the guns charges until after he pleaded guilty to the drug charges [DE 53, Page ID# 168]; and

- Brown believed the evidence was insufficient such that he wanted to take the case to trial [DE 53, Page ID# 168-69].

The record rejects each of these arguments.

"In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and made with sufficient awareness of the relevant circumstances and likely consequences." *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. July 3, 2017) (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). "Courts evaluate the voluntariness of a guilty plea in light of all relevant circumstances surrounding

---

[3] Ground 5 is discussed *infra*.

the plea." *Id.* Critically, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73-74.

Brown's first basis in support of his claim is that Caldwell failed to explain to him that Brown's sentence in this case could run consecutive to the Drug Trafficking Case. [DE 53, Page ID# 168 ("I thought the §922(g) charge would run concurrent")]. Brown never alleges that Caldwell told him one way or the other whether this sentence in the Firearms Case would run consecutive or concurrent to the Drug Trafficking Case. Regardless, even assuming Caldwell had told Brown it would likely run concurrent, Brown's claim still lacks merit. Courts have repeatedly held that counsel's representations and predictions as to a possible sentence or guideline calculation do not rise to the level of ineffective assistance of counsel. *See United States v. Kutilek*, 260 Fed. Appx. 139, 146 (10th Cir. 2008) (miscalculations or erroneous sentence estimation by counsel do not rise to the level of ineffective assistance of counsel); *United States v. Ryan*, 986 F. Supp. 509, 513 (N.D. Ill.1997) ("counsel cannot be found to have rendered constitutionally ineffective assistance based on inaccurate sentence predictions made in good faith"); *Beckham v. Wainwright*, 639 F.2d 262, 266 (5th Cir. 1981) (erroneous estimate by counsel as to the length of sentence is not necessarily indicative of ineffective assistance). Where the defendant is advised of the maximum sentence applicable to the offense charged

under the guidelines, as is true in both of Brown's cases, he is deemed fully aware of the consequences of his plea. *See United States v. Rivera*, 898 F.2d 442, 447 (5th Cir.1990).

The second basis for his claim makes little sense. Brown pleaded guilty the Drug Trafficking Case on December 7, 2021. He pleaded guilty in the Firearms Case on July 18, 2022, more than seven months later. Brown suggests that when he pleaded guilty to the drug charges in the Drug Trafficking Case, he was unaware of the gun charges in this case. "I was never told anything about any pending federal charges for the guns, until after I pleaded to the drugs." [DE 53, Page ID# 168]. The Court struggles to understand how that fact that he was unaware of the charges in the Firearms Case when pleading to the Drug Case somehow impacts the voluntariness nature of his plea in the Firearms Case. He plainly knew the charges when he entered into the plea agreement [DE 20] and when the Court informed him of the charges at his rearraignment prior to pleading guilty [DE 63, Page ID# 298-99]. Caldwell could not be ineffective in this case for Brown's decision at a guilty plea proceeding in another case seven months earlier.

Brown's last basis is that there was insufficient evidence to support his guilty plea as to the charge in 18 U.S.C. § 922(g)(1) as Brown states he never possessed the firearm. [DE 53, Page ID# 169 ("Mr. Brown repeatedly asserted to his attorney the evidence was insufficient to prosecute him, and constuctive [*sic*] possession was based on no facts, at all, and it would prevail if he went to trial")]. At his guilty plea, Brown stated under oath the contrary.

THE COURT: So, let's turn back, if we could, to the substantive charge of being a felon in possession of certain firearms. It's charged on the date and location. And if you could tell me, in your own words, what was it that you did to be guilty of this charge, Mr. Brown?

THE DEFENDANT: I possessed guns, being a felon.

THE COURT: All right. Were they the three firearms that were listed in the indictment?

THE DEFENDANT: Yes, sir.

THE COURT: And did your possession occur on or about the date that's charged and also in the location, which is June 28th of last year in Fayette County?

THE DEFENDANT: Yes, sir.

[DE 63, Page ID# 310-11]. Under clear and repeated precedents, the Court cannot ignore sworn statements at the rearraignment in favor of later, conclusory statements to the contrary. *See United States v. Brown*, 752 F. App'x 309, 315 (6th Cir. 2018).

Overall, Brown's arguments of coercion are unfounded and not supported by the record. The Court should deny his petition on this ground.

6.    **Ground 7: Failure to Object to Consecutive Sentence**

Brown's seventh ground faults Caldwell for failing to object to the Court's decision to run his sentence in the Firearms Case consecutive to the Drug Trafficking Case. [DE 53, Page ID# 171-75]. Upon review of the transcript, Brown is correct that Caldwell did not raise this objection at sentencing. Even assuming that Caldwell was deficient for raising the objection to the consecutive sentence, the issue is whether counsel's performance "was so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th

14

Cir.1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Brown cannot meet that burden.

The Court detailed its rationale for the consecutive sentence. Namely, the Court considered two different criminal cases with completely different conduct at completely different times. In the Drug Trafficking Case, Brown was convicted of a conspiracy to distribute huge volumes of methamphetamine. The events surrounding the conspiracy took place in May 2021 as investigation by the Lexington Police Department ("LPD"). Through a series of confidential informants, LPD determined that Brown and others were storing a large amount of methamphetamine in the ceiling of an office complex here in Lexington, Kentucky. When searched, the office revealed a large drug trafficking operation.

> During the search of the office suite, detectives located more than 50 pounds of suspected methamphetamine. Additionally, approximately 2 pounds of suspected cocaine was located in the ceiling of the office space. … Numerous items indicative of narcotics trafficking to include a hydraulic kilo style press, an illicit pill press, digital scales with residue, blenders with residue, and packaging material were also located.

[DE 21, Page ID# 609 (Plea Agreement), Drug Trafficking Case]. At sentencing, the Court described the charges in the Drug Trafficking Case as "one of the largest cases in terms of crystal methamphetamine that's come before this Court." [DE 59, Page ID# 267].

The facts of the Drug Trafficking Case are contrasted with the facts in the Firearms Case. As mentioned above, this case focused on Brown's possession of

firearms as a previously convicted felon on June 28, 2021. Not only is this case separated by a couple of months, but it is not related or tied to the drug trafficking conspiracy in the prior case. In addressing the criminal history points, the Sixth Circuit detailed all the ways in which the activities in the Drug Trafficking Case were separate and distinct from the Firearms Case. *United States v. Brown*, --- F.4th ---, 2025 WL 716082, at * 4-5 (6th Cir. March 6, 2025) (noting the differences in geographies, dates, victims, etc. as well as the fact that that the two crimes were not part of a common scheme or plan").

With all of this, the Court explained its reasons for a consecutive sentence, repeatedly emphasizing the separate criminal conduct. [DE 59, Page ID# 219, 271]. "Otherwise, it would not provide sufficient punishment for the defendant for his separate criminal conduct." [DE 59, Page ID# 219]. Unless the court orders otherwise, "[m]ultiple terms of imprisonment imposed at different times run consecutively." *See* 18 U.S.C. § 3584(a). A defendant that fails to request a concurrent sentence would "have a difficult time challenging the consecutive nature of the sentence." *See United States v. Jackson*, 546 F.3d 465, 471–72 (7th Cir. 2008) (noting § 3584(a) default and excusing lack of § 5G1.3 discussion by the district court where defendant "failed to request a concurrent sentence" and the district court "remained silent" on the issue).

In short, Brown cannot demonstrate "a reasonable probability that . . . the result of the proceeding would have been different"—that the District Court would have ordered a concurrent sentence—if counsel had asked for such a sentence.

16

*Strickland*, 104 S.Ct. at 2068. The District Court extensively outlined its resolute decision to impose consecutive sentences. The failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel. *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir.1990). Brown is not entitled to § 2255 relief on this claim of ineffective assistance.

### 7.    **Ground 8: Failure to File Notice of Appeal**

In his eighth ground, Brown contends that Caldwell failed to file an appeal in the Firearms Case despite Brown's supposed directions to the contrary. [DE 53, Page ID# 176-77]. Both parties agree that Caldwell did file a notice of appeal in the Drug Trafficking Case. Thus, the issue before the Court is whether Brown made an explicit request for Caldwell to file an appeal in the Firearms Case.

### *a.    Communications About the Filing of an Appeal*

The Court held an evidentiary hearing to explore the topic of Brown's alleged appeal request. [DE 74]. At the hearing, the Court heard testimony from Brown, Caldwell, and Brown's mother, Carla McDuffy. As with prior grounds, much of the dispute centers upon, in part, the confusion between a possible appeal in this case, the Firearms Case, as compared to the Drug Trafficking Case. Again, the sentencing for both cases was held in a joint hearing. [DE 41].

Even prior to the joint sentencing hearing, Caldwell and Brown discussed their appellate options and plans. Caldwell stated as much.

> It was very clear between myself, Lamonte [Brown], and even Carla [McDuffy], that the notice of appeal that was going to be filed was going to be filed on the [Drug Trafficking Case]. Everybody was on board with not filing a notice of appeal on the [Firearms Case]. I would have never

filed one and not the other without that understanding amongst the parties.

[DE 77, Page ID# 487]. Caldwell emphasized the parties were in full agreement prior to the sentencing, something Brown does not dispute.

At the sentencing itself, the Court provided Brown with oral and written notice of his appellate rights, asking him to sign a form indicating his understanding of his appellate rights. [DE 76, Page ID# 380]. Brown believed that by signing that he understood his appellate rights, he was also signing his notice of appeal. [DE 76, Page ID# 399-400]. But Brown recalls also telling Caldwell that he wanted to challenge the criminal history calculation as well as consecutive nature of the two sentences. [DE 76, Page ID# 381]. Brown did not indicate in which case, either the Firearms Case or the Drug Trafficking Case or both, he wanted to pursue these legal issues. Per Caldwell, he and Brown "discussed the fact that he was sentenced within the guideline range and that the Court ran his sentence consecutive to [the Drug Trafficking Case]. After this discussion, the decision was mutually made to not file an appeal in [the Firearms Case]." [DE 65-3, Page ID# 351; DE 77, Page ID# 502-03]. Rather, as Caldwell saw it, the appeal in the Drug Trafficking Case included the issue of the two-point enhancement for added criminal history and the consecutive sentence issue, both issues which Brown mentioned to Caldwell he wanted to appeal. [DE 77, Page ID# 488]. Caldwell contended he was following Brown's request.

Immediately after the sentencing, Caldwell met with McDuffy as well as other family members. [DE 76, Page ID# 403]. The parties discussed Brown's appellate options. [DE 76, Page ID# 404]. Per McDuffy, Caldwell told them he would file an

appeal in the Drug Trafficking Case but said he was not going to file in the Firearms Case because Brown had pleaded guilty. [DE 76, Page ID# 404]. Per Caldwell, he simply reaffirmed their plan to appeal the Drug Trafficking Case and not the Firearms Case. [DE 77, Page ID# 507].

Over the following two weeks, both Brown [DE 76, Page ID# 382-84] and McDuffy say they called and texted Caldwell [DE 76, Page ID# 406], but neither provided any proof of these communications. In contrast, Caldwell provided specific testimony by reading text messages between he and McDuffy. However, those text messages concerned the possibility of Caldwell representing McDuffy in a possible personal injury case. [DE 77, Page ID# 490-92]. Caldwell and McDuffy did text about some questions from Brown, but those questions did not address any appeals issue. [DE 77, Page ID# 490-92].

### b. Ineffective Assistance of Counsel: Failure to File a Notice of Appeal Legal Standard

"The failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment" and satisfies both prongs of the *Strickland* test. *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012). "[B]ecause such a failure on the attorney's part deprives the defendant of any counsel whatsoever," prejudice is categorically presumed, regardless of any potential appeal merits. *Id.*; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). This is true even where a defendant has waived some or even all of her appeal rights in a plea agreement. *Campbell*, 686 F.3d at 359. "When a defendant presents an affidavit containing 'a factual narrative of the events that is neither contradicted by the record

19

nor inherently incredible' and the government offers nothing more than 'contrary representations' to contradict it, the defendant is entitled to an evidentiary hearing." *Pola*, 778 F.3d at 532–33 (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir.2013)).

"An attorney performs deficiently if, after consulting with his client, he 'disregards **specific instructions** from his client 'to file a notice of appeal'—'a purely ministerial task.'" *Pola v. United States*, 778 F.3d 525, 532–33 (6th Cir. 2015) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)) (emphasis added). To help the federal courts in their analysis, the Supreme Court in *Roe* set forth a three-part, sequential analysis. First, the court must determine whether the defendant gave counsel express instructions regarding an appeal. *Roe*, 528 U.S. at 477. Second, if the Court finds that the defendant did not provide express instructions, then it must determine whether counsel consulted with the defendant about an appeal. *Id.* at 478. Whether or not counsel met his obligation to consult with his client depends on the totality of the circumstances. *Johnson v. United States*, 364 Fed. App'x 972 (6th Cir. 2010) (citing *Roe*, 528 U.S. at 480). Finally, if there was no consultation, then the Court must decide whether the failure to consult was objectively unreasonable. *Id.* at 479.

For the first step, there is no dispute that Caldwell and Brown discussed and agreed to a plan to appeal the Drug Trafficking Case. The record, however, is convoluted as to the appeal of the Firearms Case. Per Caldwell, Brown never told him to appeal the Firearms Case. Per Brown, he told Caldwell to appeal two issues,

both of which were involved in the Drug Trafficking Case and the Firearms Case. There is a possibility that Brown told Caldwell to appeal those two issues, meaning that Caldwell would appeal the Firearms Case. But equally possible is that Caldwell could have heard that instruction and believed the appeal of the Drug Trafficking Case would and did address those two issues. "Expressing a desire to appeal is not the factual or legal equivalent of specifically instructing counsel to appeal." *United States v. Taylor*, No. 6:07–12–DCR, 2008 WL 4829873, at *7 (E.D. Ky. Nov. 5, 2008); *see also Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003) ("But although Regalado expressed her desire to file an appeal, she did not specifically instruct [counsel] to do so."). Brown made an express request to appeal two issues, which Caldwell did. Whether his desire encompassed both the Drug Trafficking Case and the Firearms Case, however, is far from clear. The Court finds that Brown did not give express instructions to Caldwell to appeal the Firearms Case considering the confusion between the two cases.

Turning to the second step, consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Regalado*, 334 F.3d at 525 (citing *Roe*, 528 U.S. at 478). In this case, the evidence is undisputed that Brown consulted with Caldwell. Brown and Caldwell met prior to sentencing; Brown and Caldwell talked after sentencing; Caldwell met with Brown's family after sentencing; Caldwell texted with McDuffy in the fourteen days after sentencing; and

21

Caldwell appealed the Drug Trafficking Case. Thus, the Court finds that Caldwell fully consulted with Brown regarding the possibility of an appeal.

Considering that Caldwell did consult with Brown about his appeal, there is no need to turn to the third step. Brown has failed to establish preponderant evidence that Caldwell provided constitutionally deficient assistance by failing to file a notice of appeal in the Firearms Case. The undersigned recommends the Court find Brown is not entitled to relief on this ground.

## B.    REMAINING GROUNDS

Brown asserts two grounds that are not claims of ineffective assistance of counsel. Namely, Brown contends the Court failed to comply with the *Bostic* rule at sentencing. Brown also challenges the constitutionality of the statute for which he was convicted. The Court addresses both arguments in turn.

### 1.    Ground 5: Alleged *Bostic* Violation

Brown contends that the Court failed to adhere to the *Bostic* rule as set forth in *United States v. Bostic*, 372 F.3d 865 (6th Cir. 2004). [DE 53, Page ID# 165]. As the Sixth Circuit has more recently explained, "*Bostic* established a 'procedural rule, requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised.'" *United States v. Carter*, 89 F.4th 565, 570 (6th Cir. 2024) (quoting *Bostic*, supra at 872). As referenced above, the Court conducted a joint sentencing both in this case and the Drug Trafficking Case in the same hearing. Brown complains that, after

conducting the sentencing in the Firearms Case, the Court deferred the *Bostic* rule until after completion of the sentencing in the Drug Trafficking Case.

The record is clear. At the conclusion of the sentencing in this case, the Court stated:

> I'm going to ask for objections in both cases as well as I'll ask the clerk to advise the defendant of his appellate rights in both cases at the conclusion of the sentencing proceeding in the 2021 case.

[DE 59, Page ID# 223]. After sentencing Brown in the Drug Trafficking Case, the Court then asked for any objections.

> I'll ask counsel to state any objections that they may have to the sentence, and this applies to both cases. Any objections that the parties may have to the sentences that have been announced. Second would be any objections under *United States v. Bostic*. Now, under that decision from the Sixth Circuit, any objections not previously raised should be raised at this time so that they may be addressed by the Court to be properly preserved for review on appeal. Finally, if the parties would like the Court to make additional findings to support any of the determinations that have been announced, I would be happy to do so if requested.

[DE 59, Page ID# 274-75]. Per Brown, the Court's election to wait until after both sentences were announced violated *Bostic*. [DE 53, Page ID# 165].

Brown's argument is without merit and without support in the law. *Bostic* required the Court to inquire if there were any objections the parties had not raised that they wish to raise so the Court could address them. The Court did just that. The Court specifically asked for *Bostic* objections and noted that the request "applie[d] to both cases." [DE 59, Page ID# 274]. Brown neither objected to the Court's decision to wait to address the objections at the completion of both cases nor did he make any actual new objections in response to the Court's *Bostic* query. There is no

requirement that the *Bostic* rule be made at a certain moment in the sentencing hearing, only that it be made at some point during the sentencing hearing to allow parties to preserve arguments.

The Court fully complied with the procedural rule in *Bostic*. The Court should deny Brown's habeas motion on this fifth ground.

### 2.    Ground 9: Constitutionality of 922(g)(1)

In his ninth and final ground, Brown contends that his conviction for possessing a firearm as a previously convicted felon is improper under the Supreme Court's recent decision in *Bruen*. The Court disagrees.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court affirmed that the Second Amendment guarantees the right of a person to possess a handgun in the home for self-defense. In *New York State Rifle & Pistol Assoc. v. Bruen*, the Supreme Court affirmed that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." 597 U.S. 1, 142 S. Ct. 2111, 2122, 213 L.Ed.2d 387 (2022). More importantly, *Bruen* altered how courts should examine the constitutionality of a statute that falls within the scope of activity governed by the Second Amendment. Namely, the Supreme Court rejected means-end scrutiny. *Bruen*, 142 S. Ct. at 2126–27. Rather, the Supreme Court adopted the following standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The

government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation.

*Id.* at 2129–30. In *United States v. Rahimi.* ⸺ U.S. ⸺, 144 S. Ct. 1889, 219 L.Ed.2d 351 (2024), the Supreme Court built upon *Bruen's* historical inquiry and emphasized that firearm regulations must not have a historical twin. *Id.* at 1898.

Following the recent decision in *Bruen* and *Rahimi*, the Sixth Circuit recently addressed the constitutionality of 922(g)(1), the same statute Brown now challenges, in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). Initially, the Sixth Circuit agreed that 922(g)(1) covers an individual's conduct under the Second Amendment. Next, when turning to the historical inquiry, the Sixth Circuit provided a thorough analysis of this nation's treatment of dangerous individuals and firearms.

> This historical study reveals that governments in England and colonial America long disarmed groups that they deemed to be dangerous. Such populations, the logic went, posed a fundamental threat to peace and thus had to be kept away from arms. For that reason, governments labeled whole classes as presumptively dangerous. This evaluation was not always elegant. And even though some of those classifications would offend both modern mores and our current Constitution, there is no doubt that governments have made such determinations for centuries. Each time, however, individuals could demonstrate that their particular possession of a weapon posed no danger to peace.

*Id.* at 657. From this, the Sixth Circuit rejected any facial challenge. "As discussed above, our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous. Section 922(g)(1) is an attempt to do just that. Because, as we discuss below, most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge." *Id.*

This conclusion mirrors prior decision by this very Court. *See United States v. Goins*, 647 F. Supp. 3d 358 (E.D. Ky. 2022); *United States v. Davis*, No. 5:19-cr-159-

DCR, 2022 WL 18587703 (E.D. Ky. Dec. 29, 2022) (rejecting the challenge in the context of a habeas petition); *United States v. Wilkins*, No. 5:22-cr-16-GFVT, 2023 WL 6050571 (E.D. Ky. Sept. 15, 2023); *United States v. Brooks*, No. 23-cr-26-DLB, 2023 WL 6880419 (E.D. Ky. Oct. 18, 2023); *United States v. Starghill*, No. 7:19-cr-5-KKC, 2023 WL 7385777 (E.D. Ky. Nov. 8, 2023) (rejecting the challenge in the context of a habeas petition).

Here, per Brown's argument, he likewise asserts a facial challenge to 922(g)(1). [DE 53, Page ID# 178-82]. And like Williams, per the binding precedents discussed above, Brown's argument must fail. The Court should deny Brown's petition on this ground.

### III.   CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

As detailed above, Brown asserts nine grounds for habeas relief. His first three grounds all argue that Caldwell should have filed a motion to suppress certain law

enforcement actions underlying his conviction. In all three instances, Brown had no meritorious argument for suppression. Brown's fourth ground cites Caldwell's failure to object to his criminal history points at sentencing. Again, Brown's position has no legal merit. His fifth ground argues that the Court invited any additional objections under the *Bostic* rule after the conclusion of sentencing in both cases, something *Bostic* in no way prohibits. Brown, in his sixth ground, suggests his guilty plea was involuntary. The record rejects this suggestion. Like his fourth ground, Brown's seventh ground argues that Caldwell should have objected to the imposition of consecutive sentences. And again, Brown's arguments have no legal justification. Brown's eighth argument challenges whether Caldwell should have filed a notice of appeal in this case. Although there were miscommunications between Brown and Caldwell, Caldwell did everything in his capacity to respond to his client's demands. And finally, Brown's contention that 922(g)(1) is unconstitutional was plainly rejected by the Sixth Circuit.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

### IV.   <u>CONCLUSION</u>

For the reasons stated herein, the Court **RECOMMENDS**:

1)   The District Court **DENY**, with prejudice, Brown's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 53]; and

2)   The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. See also Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); Thomas v. Arn, 106 S. Ct. 466 (1985).

Entered this the 25th day of March, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

28